# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CATHERINE PRESS, as Personal
Representative of the Estate of John R.
Press,

                              Plaintiff,

-vs-                                            Case No.  6:11-cv-1788-Orl-28KRS

SHERIFF OF BROWARD COUNTY,
FLORIDA, SHERIFF OF BREVARD
COUNTY, FLORIDA, and CLERK OF
COURT FOR BROWARD COUNTY,
FLORIDA,

                              Defendants.
_____

## ORDER

On June 18, 2010, a month afer tripping and hitting his head in the Broward County

Courthouse while on his way to a hearing, John R. Press ("Press") died.  This suit against

the Broward County Sheriff, the Broward County Clerk of Court, and the Brevard County

Sheriff has been brought pursuant to 42 U.S.C. § 1983 by Press's wife ("Plaintiff") as the

personal representative of Press's estate.  In the Amended Complaint (Doc. 36), Plaintiff

alleges that the Defendants violated Press's constitutional rights in connection with his arrest

and his medical treatment while in custody.  Plaintiff also brings state law claims of false

imprisonment and claims under the Florida Wrongful Death Act[1] based on negligence.

The case is now before the Court on the Motions for Summary Judgment filed by the Defendants.  (Docs. 91, 93, & 97).  Having considered the parties' submissions and applicable law, the Court concludes that Defendants' motions must be granted as to all of Plaintiff's claims.

I.  Background

On December 25, 1985, Press was stopped by a law enforcement officer in Broward County, where he then resided, for several traffic violations.  He was charged with driving under the influence and three other infractions, and in January 1986 he pled guilty and was placed on probation for six months.  (See Clerk's Exs. A & B, Docs. 92-1 & 92-2).[2]  In July 1986, after Press's probation officer submitted an Affidavit of Violation of Probation, a Broward County judge issued a warrant for Press's arrest, with bond set at $1500.  (See Clerk's Ex. C, Doc. 92-3).

At some point between July 1986 and November 2009, Press moved from Broward County to Brevard County.  On November 14, 2009, Press was stopped by a Palm Bay police officer,[3] who learned of the outstanding 1986 Broward County warrant for Press's arrest.  The officer also cited Press for driving while his license was suspended and driving with an out-of-state license while his Florida license was suspended.  The officer took Press

_____

[1]§§ 768.16-.26, Fla. Stat.

[2]Many of the documents referenced in this Order appear at multiple places in the record, but in the interest of brevity only one record citation is provided.

[3]The city of Palm Bay is in Brevard County.

to the Brevard County Jail, and the next day Press was served with the 1986 arrest warrant. On November 17, 2009, Press was released from the Brevard County Jail on a $1500 surety bond on the Broward County violation-of-probation charge. The Broward County Sheriff's Office was informed of Press's arrest and his posting of bond. (See Brevard Sheriff's Ex. 1, Doc. 97-1 at 1 through 3 & 17).

On February 26, 2010, Press was present in Brevard County court for one of several appearances regarding the November 2009 charges of driving while license suspended and using a driver license while suspended. (Pl.'s Ex. 5, Doc. 114 at 12-13). During that appearance, a plea was scheduled for April 30, 2010, at 9:00 a.m. (Id.). Meanwhile, on February 5, 2010, a hearing was noticed by the Broward Clerk on Press's violation of probation; the hearing was set for March 25, 2010, before a judge in Broward County. (Pl.'s Ex. 8, Doc. 114 at 21-22). The hearing notice reflects that it was sent to Press at a Broward County address—the one at which he resided when he was on probation in 1986—and to Press's bail bondsman in Palm Bay. (See id.).[4] Press did not show up for the March 25

---

[4]There is also evidence that the Broward County probation office, which is under the authority of the Broward Sheriff, informed Press of the hearing in a letter dated February 8, 2010 addressed to Press at his Brevard County address, though Plaintiff disputes that this letter was sent. The letter was contained in Press's Broward County probation file, as attested by the probation supervisor, Denise Josephson. (See Josephson Dep., Doc. 98, at 13-14, 23; Letter, Doc. 98-1 at 7). Additionally, the probation officer who sent the letter, Richard Williams, testified at his deposition regarding the letter. (Richard Williams Dep., Doc. 99, at 11). Williams apparently obtained Press's Brevard County address from either the Florida Driver and Vehicle Information Database (DAVID) or the Jail Management System. (See Josephson Dep. at 17-18; Richard Williams Dep. at 14-20).

After the probation officer's deposition, Plaintiff filed a motion to compel, seeking to have a forensic expert examine the computer that created the Notice of Hearing so that Plaintiff could "determine if in fact that Notice of Hearing was created on 02/08/10 or created after the Complaint was filed in this case." (Doc. 69 at 1). The assigned magistrate judge

hearing, and at the judge's direction a no-bond capias for Press's arrest was issued that day by the Broward Clerk.  (Brevard Sheriff's's Ex. 1, Doc. 97-1. at 20-21).

At 8:24 a.m. on April 30, 2010, while he was on his way to the courthouse in Brevard County for the 9:00 plea hearing on the suspended license charges, Press was involved in a traffic collision.[5]  (See Pl.'s Ex. 12, Doc. 114 at 42-44).  A Florida Highway Patrol officer who responded to the collision learned of the outstanding March 25 capias from Broward County, and Press was arrested and taken to the Brevard County Jail.  (See id.).

On May 6, 2010, Press was transported to Broward County, and the next day a hearing was held before a magistrate judge there.  The magistrate judge found that there was probable cause for Press's arrest, and a hearing on Press's violation of probation was set for May 13, 2010.  (See Brevard Sheriff's Ex. 1, Doc. 97-1, at 39, 46).  On May 13, as Press was being escorted into a Broward County courtroom for the hearing, he tripped and fell over the leg shackles he was wearing and hit his head on a chair.  Press suffered a laceration over his right eyebrow but did not lose consciousness after the fall.  Paramedics responded and took him to Broward General Medical Center, where a CT scan revealed that Press had a small subdural hematoma.  (See Broward Sheriff's Ex. U, Doc. 96-6).

Press remained at Broward General until May 19, when it was determined that he was

_____

denied that motion based on lack of compliance with Local Rules and on Plaintiff's failure to establish relevance; the magistrate judge noted that Plaintiff had presented no legal authority for the proposition that the Broward Sheriff's Office was required to issue a notice of hearing. (Order, Doc. 84).

[5]Plaintiff states, and there is no indication to the contrary, that Press was not at fault in the April 30 collision.

stable enough to be released to the custody of the Broward County Jail.  (Broward Sheriff's Ex. V, Doc. 96-7).  On May 20, 2010, Press appeared with counsel in court in Broward County for a hearing on his violation of probation.  (Clerk's Ex. S, Doc. 92-19).  He admitted the violation, his probation was revoked, and he was sentenced to fifteen days, time served. (See id.).  When Press was to be released from jail on May 21, he was not feeling well and was taken to North Broward Medical Center and admitted.  (Pl.'s Ex. 18, Doc. 115 at 18-19; Pl.'s Ex. 32, Doc. 116 at 32-34).  On May 27, 2010, a right front parietal craniotomy was performed on Press at North Broward.  (See Pl.'s Ex. 18).  Press was discharged into an in-patient rehabilitation unit on June 5, 2010, (see id.; Broward Sheriff's Ex. W, Doc. 96-8), and some time thereafter he was moved to a rehabilitative hospital in Brevard County.

At the rehabilitative hospital on June 18, 2010, Press complained of left-side weakness and then became unconscious.  (See Pl.'s Ex. 20, Doc. 115 at 39-54).  He was taken to the emergency room at Holmes Regional Medical Center, where he was pronounced dead.  (Id.).  The medical examiner determined that Press died from bilateral pulmonary embolism due to deep vein thrombosis in his legs.[6]  (Id.).  At the time of his death, Press was seventy-three years old and was survived by his wife and seven-year-old son.

Plaintiff filed this lawsuit on November 10, 2011.  Plaintiff alleges constitutional violations, negligence, and false imprisonment against each of the three Defendants.  In her

---

[6]Plaintiff's expert witness, Dr. David Goldstein, explained in his deposition that after any surgery there is a risk of pulmonary embolism and that because Press had had a brain hemorrhage, he could not be given the usual anticoagulants.  (Goldstein Dep. at 15-16). Press was instead treated with compression stockings and ambulation, which is all that could be done.  (Id.).

§ 1983 claims against the Brevard Sheriff and the Broward Sheriff, Plaintiff alleges that while Press was in custody at the Brevard and Broward jails—which were maintained by the respective Sheriffs—he was not given medications for diabetes or hypertension.  Plaintiff also alleges that the Sheriffs were negligent in not giving Press his medications and in not providing him with medical care.  Additionally, Plaintiff brings false imprisonment claims against the Sheriffs.

Against the Clerk, Plaintiff alleges, pursuant to § 1983, that the Clerk issued an unlawful warrant and that if not for the unlawful warrant, Press would not have required brain surgery or died.  Plaintiff also brings a negligence claim against the Clerk, asserting that the Clerk owed and breached a duty not to issue unlawful warrants and a duty to accurately report the existence or nonexistence of warrants.  Finally, Plaintiff alleges false imprisonment against the Clerk, again relying on the Clerk's issuance of the arrest warrant.  Defendants seek summary judgment on all claims.

## II.  Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1263 (quoting Anderson, 477 U.S. at 251-52).

### III.  Discussion

#### A.  Claims Against the Brevard Sheriff

#### 1.  § 1983

In her § 1983 claim against the Brevard Sheriff, Plaintiff alleges that Press was denied his constitutional right to receive medications while he was incarcerated at the Brevard County Jail.  (Am. Compl. ¶ 90).  Plaintiff further alleges that if Press had been given his medications, "he would not have required the brain surgery and hospitalization" and would not have suffered pain or died.  (Id. ¶ 95).

As noted by the Brevard Sheriff in his summary judgment motion, Plaintiff's § 1983

claim is in the nature of a claim of "deliberate indifference to serious medical needs." (See Doc. 97 at 8). Because Press was an arrestee or pretrial detainee at the time of the events at issue, this claim arises under the Due Process Clause of the Fourteenth Amendment. See Youmans v. Gagnon, 626 F.3d 557, 563 n.6 (11th Cir. 2010) ("The Fourteenth Amendment governs claims of medical indifference to the needs of pretrial detainees[,] while the Eighth Amendment applies to claims of convicted prisoners. Because the minimum standard for providing medical care to pretrial detainees is the same as the standard for providing medical care to convicted prisoners under the Eighth Amendment, . . . cases decided under either amendment [are considered precedential]." (internal citations omitted)).

"To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: '(1) a serious medical need; (2) the defendant[']s deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.'" Id. at 563 (alteration in original) (quoting Mann v. Taser Int'l, 588 F.3d 1291, 1306-07 (11th Cir. 2009)). Plaintiff has not presented evidence supporting each of these factors, and thus the Brevard Sheriff is entitled to summary judgment on this claim.

There is evidence that Press was a Type 2, non-insulin-dependent diabetic and that he took medication for both diabetes and hypertension. When he was taken to the Brevard County jail after his April 30 arrest, Press reported his medical conditions, advised that he took medications, and provided the name of his pharmacy. However, when that pharmacy was contacted, the pharmacy told the jail nurse that it had no records for Press. (See Pl.'s Ex. 27, Doc. 116 at 4). Although Press was not given medication for diabetes or hypertension at the Brevard County Jail, his blood pressure and glucose level were regularly

-8-

monitored throughout his time at the jail, (see Ex. 1 to Hibbs Dep.), and there is no evidence that his condition deteriorated due to not being given medication while he was there.  In light of this record, Plaintiff has not established a "serious medical need" for Press's medication or "deliberate indifference" to any such need.  See, e.g., Lindwurm v. Wexford Health Sources, Inc., 84 F. App'x 46, 48 (11th Cir. 2003) (affirming summary judgment where plaintiff did not proffer "sufficient evidence to create a triable [issue of] fact as to whether defendants acted with deliberate indifference," noting that there was no evidence that "lapses in medication posed 'an excessive risk' to his health, let alone that defendants knew of this risk and disregarded it," and that there was no evidence that delay in receiving medication substantially harmed plaintiff).

Additionally, there is no evidence of any causal connection between lack of medication and Press's injury.  As the Brevard Sheriff correctly asserts, "Plaintiff cannot bridge the gap between [Press's] stay at the Brevard County jail and his later trip, fall, and death" in Broward County.  (Doc. 97 at 10).  Plaintiff's expert witness, Dr. David Goldstein, expressed no opinion regarding Press's treatment at the Brevard County Jail from April 30 to May 6 or about whether that treatment had anything to do with Press's May 13 fall in a Broward County courtroom.  (Goldstein Dep., Doc. 103, at 11, 17, & 56).[7]

Plaintiff has not asserted any possible connection between lack of blood pressure medication and Press's fall.  She does assert that lack of diabetes medication could have

---

[7]Goldstein did not express any opinion about any medical care or treatment that Press received prior to the day of the fall—May 13, 2010.  (Goldstein Dep. at 11).  The opinion he expresses in his report is that Press's death "was directly related to his incarceration." (Goldstein Report, Ex. 1 to Goldstein Dep.).

played a role in the fall, but this contention is based solely on speculation.  Dr. Goldstein testified during his deposition that diabetes can cause neuropathy—problems with balance—but he also agreed that there was no evidence that Press ever had neuropathy, including at the time of the fall.  (Id. at 21-24).  Additionally, Dr. Goldstein explained that neuropathy is a chronic condition that develops over a number of years or even decades and is usually a long-term problem rather than being caused by an acute blood sugar level at a single point in time.  (Id. at 23-24, 46).

Immediately after the fall, Press told the deputy who responded to the courtroom and the paramedic who took him to the hospital that he fell because the shackle chain got caught on his toe.  (See Narrative, Ex. 2 to Kiernan Dep., Doc. 100 at 44 (recounting that Press "advised he tripped because the shackle chain got caught on his left big toe causing him to fall forward"); Ft. Lauderdale Fire and Rescue Report, Ex. 1 to Oppy Dep., Doc. 101 at 43 (noting that Press stated "that he was walking out in shackles and got caught up in chains and tripped and fell"); Oppy Dep., Doc. 101, at 27).  The paramedic's report also indicates "no dizziness," "no gait problem," and no blurred or double vision, and the paramedic explained at his deposition that he assessed all of those conditions and Press reported none of these problems.  (Oppy Dep. at 12; Ex. 1 to Oppy Dep.).  Press did not mention to those at the scene that he was feeling dizzy or off-balance, nor did he suggest any reason for the fall other than getting caught in the shackle chain.  And, even if he had, there is no evidence to connect dizziness or other symptoms to a lack of medication.[8]  In sum, there is no

---

[8]Plaintiff testified in her deposition that she was not aware of Press having any dizzy spells or falls prior to April 2010.  (Pl. Dep., Doc. 104, at 47).  She also testified that Press

evidence in the record supporting Plaintiff's speculation that lack of medication played any

role in Press's fall in the courtroom.[9]

_____

told her on the telephone from the Broward County Jail that he had had dizzy spells and had fallen a couple of times, and she "guessed" he meant he had fallen in his cell. (Id. at 48-49). Plaintiff did not know the date that this conversation occurred but she described it as after the first hospitalization. (Id. at 50-51). She also stated that in the hospital as he was on his way into surgery, Plaintiff told her he was lightheaded and that caused him to fall. (Id. at 59). This testimony does not establish that Press was dizzy prior to his fall in the courtroom, and even if it did it would not establish a connection between dizziness and lack of medication.

[9]The Court also rejects Plaintiff's contentions—raised in her summary judgment filings but not in her Complaint—regarding Press's alleged weight loss. Plaintiff cites a Broward County Booking Report Form dated May 6, 2010, that indicates that Press, who is variously described in the records as being 5 feet 8 inches or 5 feet 9 inches tall, weighed 125 pounds. (Pl.'s Ex. 28). Plaintiff suggests that this document indicates that Press lost seventy-five pounds while in custody and that this weight loss evidences a deteriorated condition. (See Doc. 128 at 14; Pl.'s Ex. List, Doc. 114 at 2 (identifying this booking report as showing that Press's weight went "from 200 lbs to 125 lbs while incarcerated in the 2 jails")). However, the record evidence and common sense belie any such contention.

When Press was arrested in November 2009, his weight was recorded as 199.4 and 200 pounds. (See Ex. 1 to Hibbs Dep., Doc. 105-3 at 6 & Doc. 105-4 at 6, 16). Five months later, Press was again arrested on April 30, 2009, and his weight was recorded as 186 and 188 pounds. (Id. at 11, 38). Despite the indication on the May 6 booking report upon which Plaintiff focuses, the medical intake form from the Broward County Jail indicates that Press weighed 182 pounds on May 6, (Attach. to Frankowitz Dep., Doc. 95-6 at 15), as does the Vital Signs Flow Sheet for that date, (Doc. 95-9 at 3). When Press returned to the Broward Jail from the hospital on May 19, he weighed 172 pounds. (See Frankowitz Dep. at 17). Records from North Broward Medical Center, where Press was taken on May 21, indicate that on May 24 he weighed 75.2 kilograms or 165.8 pounds. (Pl.'s Ex. 18, Doc. 115 at 18-22). A Nutrition Assessment completed on June 6, 2010, indicated that he weighed 161 pounds. (Doc. 115 at 29). And, the medical examiner's autopsy report indicates that Press's body weighed 165 pounds on June 21. (Pl.'s Ex. 20, Doc. 115 at 41). In sum, aside from the impossibility of Plaintiff losing over sixty pounds in one week as suggested by Plaintiff, the overwhelming evidence indicates that the document indicating 125 pounds is an aberration and the result of a mistake.

When asked about Press's weight loss—some did occur during his confinement, though not to the level urged by Plaintiff—the doctor at the Broward County Jail, Dr. Stanley Frankowitz, explained that he would not "attach much relevance to it because [Press] was overweight" and had been put on a 2400-calorie diabetic diet, which was less than Press was probably eating prior to arriving at the jail. (Frankowitz Dep. at 26; see also Nutrition

Even if Plaintiff had presented evidence supporting each element of deliberate indifference by jail personnel, her § 1983 claim against the Sheriff would fail for an additional reason—lack of a legally sustainable basis for § 1983 liability against the Sheriff.  The Sheriff is not alleged to have been personally involved in the events at issue, and the doctrine of respondeat superior does not apply in actions under § 1983; instead, the Sheriff may only be held liable when an injury results from a policy or custom of the Sheriff's office.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978).  Plaintiff has presented no evidence of a policy or custom by the Brevard Sheriff that led to Press's injuries, and this claim fails for this reason as well.  See, e.g., MacMillan v. Roddenberry, 432 F. App'x 890, 896 (11th Cir. 2011) (affirming summary judgment where plaintiff "presented no evidence that [the sheriff] adopted a custom or policy of denying inmates medical care"); Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999) (affirming summary judgment where plaintiff "submitted no evidence that any delay in treating his diabetes or in responding to his alleged adverse reactions to [medication] were attributable to any policy or custom of the County").

The Brevard Sheriff is entitled to summary judgment on Plaintiff's § 1983 claim against him.

2.  Negligence/Wrongful Death

_____

Assessment, Doc. 115 at 29 (indicating Plaintiff's actual weight as 161 pounds and his ideal weight as 154 pounds)).  In sum, Press's weight did decrease while he was confined and hospitalized, but even if Plaintiff had pled a claim based on weight loss she has not presented evidence that this weight loss was the result of deliberate indifference or even negligence at either jail.  The Court also rejects Plaintiff's claims insofar as they are based in any way on Press allegedly being fed "green baloney sandwiches" while at the Brevard County Jail.  (See Pl. Dep. at 123).

Plaintiff's negligence claim against the Brevard Sheriff is also based on failure to provide medications to Press.  (See Am. Compl. ¶ 105 (alleging that the Brevard Sheriff "owed a duty to the Plaintiff to provide him with his prescription medications and medical care")).  The Brevard Sheriff asserts that this claim is a medical malpractice claim that is barred by Plaintiff's failure to comply with pre-suit requirements for such claims.  Plaintiff denies that this claim sounds in medical malpractice, but regardless of how it is characterized it does not survive summary judgment.

Plaintiff does not dispute that she did not comply with the pre-suit requirements that apply to medical malpractice claims.  Thus, to the extent that this claim is one for medical malpractice, it fails based on lack of pre-suit compliance.  And, to the extent this claim is for negligence that does not constitute medical malpractice, it fails for the same reasons that the § 1983 claim did—Plaintiff has not presented evidence of negligence regarding a medical need or of a causal connection between any such negligence and Press's injury.  In other words, not only has Plaintiff failed to present evidence of deliberate indifference; she has failed to present evidence even of negligence.

### 3.  False Imprisonment

In her third claim against the Brevard Sheriff, Plaintiff alleges that "Press was arrested unlawfully by the Brevard County Sheriff," that Press was arrested on a twenty-three-year-old warrant, and that "there is evidence that there never was a warrant for [Press's] arrest." (Am. Compl. ¶¶ 109-10).  This claim fails.[10]

---

[10]As noted by the Brevard Sheriff, Plaintiff does not mention § 1983 or the Fourth Amendment in this claim, and thus it appears that Plaintiff brings her false imprisonment

First, the Brevard Sheriff's office did not arrest Press.  In November 2009, Press was arrested by the Palm Bay Police Department on the 1986 warrant and on driver license charges.  Thereafter, he was transported to the Brevard County Jail.  On April 30, 2010, Press was again taken to the Brevard County Jail after he was arrested by the Florida Highway Patrol on the March 25 capias from Broward County.  Thus, Plaintiff's allegations of false arrest against the Brevard Sheriff are not well-founded.

There were valid warrants in existence at the time of both arrests, and regardless of who arrested Press, arrest and detention pursuant to a facially valid warrant—such as occurred here—will not support a false arrest or false imprisonment claim.  "'[T]he enforcement of facially sufficient and validly issued arrest warrants are duties that law enforcement and the governmental entities associated with them owe to the general public and not to any individual person.'"  Eslinger v. Shields, 91 So. 3d 185, 186 (Fla. 5th DCA 2012) (quoting Willingham v. City of Orlando, 929 So. 2d 43, 50 (Fla. 5th DCA 2006)).  In executing valid warrants, law enforcement officers have "no obligation to look behind the warrants and no discretion in executing them," and an arrestee arrested on such a warrant "has no claim for false imprisonment."  Id.

Additionally, Plaintiff's reliance on the statute of limitations and laches in challenging Press's arrest is misplaced.  Law enforcement officers who arrest or detain pursuant to facially valid warrants are "not required to address legal questions, such as whether

---

claim under Florida law rather than federal law.  (See Doc. 97 at 16 n.12).  Even if this claim were brought under federal law, it would fail for the same reasons that the state law claim fails as well as for the additional reason that no policy or custom has been alleged or established that could support liability of the sheriff.

prosecution of the underlying offense was barred by the statute of limitations, before effectuating the arrest." Abdullah v. State, 883 So. 2d 843, 845 (Fla. 5th DCA 2004); accord Pickens v. Hollowell, 59 F.3d 1203, 1207-08 (11th Cir. 1995) (holding, in case brought pursuant to § 1983 alleging false arrest in violation of the Fourth Amendment, that "police officers have no responsibility to determine the viability of a statute of limitations defense when executing a valid arrest warrant" and that "[t]he existence of a statute of limitations bar is a legal question that is appropriately evaluated by the district attorney or by a court after prosecution has begun, not by police officers executing an arrest warrant").  And, Press's April 30 arrest was on a warrant that was little over a month old.

Press was arrested and detained pursuant to warrants that had been issued by or at the direction of a state court judge.  Plaintiff's false imprisonment claim fails as a matter of law.

B.  Claims Against the Broward Sheriff

1.  § 1983

As pleaded in the Amended Complaint, Plaintiff's § 1983 claim against the Broward Sheriff is, like her claim against the Brevard Sheriff, based on an alleged failure to give Press his medications.  (See Am. Compl. ¶¶ 57-61).  For the same reasons that the § 1983 claim against the Brevard Sheriff failed, the § 1983 claim against the Broward Sheriff fails as well.

Plaintiff has not presented evidence that the Broward Sheriff was deliberately indifferent to a serious medical need of Press.  As when Press was in the Brevard County Jail, Press's glucose level and blood pressure were monitored when he was at the Broward

County Jail, (see Broward Sheriff's Ex. M, Doc. 95-9), and the doctor at the jail noted no acute need for treatment of Press's diabetes or blood pressure while he was at the Broward Jail, (Frankowitz Dep. at 12).  Furthermore, Plaintiff has identified no consequences of a lack of medication.

Plaintiff has also failed to present evidence of a causal connection between lack of medication or other medical treatment and Press's injury or death.  The record reflects that immediately after Press fell in the courtroom, paramedics responded and took him to the hospital, where he remained for six days.  He was then released to the custody of the Broward Sheriff, and after he appeared in court on May 20 regarding his violation of probation, he was due to be released on May 21.  However, because he was not feeling well at that time, upon his release he was again transported to a hospital, where six days later he underwent surgery.  Press did not thereafter return to the custody of the Broward Sheriff. On both occasions when a need for medical treatment arose, the Broward Sheriff facilitated emergency response and treatment at a hospital.  Plaintiff has identified no deficiency in medical care provided to Press while he was at the Broward County Jail, nor has she presented evidence of deliberate indifference or causation.

And, as previously discussed, the Sheriff may not be held liable under § 1983 on a respondeat superior theory.  In order to recover against the Sheriff on a § 1983 claim, Plaintiff must show that a constitutional violation occurred as a result of a policy, custom, or practice.  Plaintiff has established neither a constitutional violation nor a basis for municipal liability, and her claim against the Broward Sheriff based on failure to provide medications fails.

Despite the allegations of the Amended Complaint, which speak for themselves, in her memorandum in response to the Broward Sheriff's motion for summary judgment Plaintiff states: "Regarding the lack of medical care, that is involved in the Defendant's negligence not part of the § 1983 claim [sic].  The § 1983 claim is about (1) shackling [Press's], and all other inmates', ankles when walking them to a courtroom hearing; and (2) violation of due process of law for not notifying [Press] he had to be at the 3/25/10 Hearing before arresting and incarcerating him with no bond by issuing a capias against him for his non-appearance." (Doc. 128 at 20).

Again, as stated in the Amended Complaint, the § 1983 claim against the Broward Sheriff involves lack of medication—not shackling or failure to give notice.[11]  In his reply memorandum, the Broward Sheriff correctly notes that Plaintiff is attempting to argue claims that were not pled.  (Doc. 132 at 3).  Plaintiff may not properly raise new claims at the summary judgment stage, and in any event Plaintiff does not cite any legal authority to support the proposition that shackling inmates while they are being transported to public hearings in and of itself violates the Constitution,[12] nor has she presented evidence contrary to the testimony of the jail doctor that there was no contraindication to the use of shackles

---

[11]Plaintiff's assertion regarding notice appears to be directed at the Clerk rather than the Broward Sheriff.  She has identified no obligation of the Sheriff to notify Press of his hearing date, and she only speculates that the probation officer failed to do so in any event.

[12]Plaintiff attempts to rely on an expert report by Ronald Lynch, a former Miami police officer, as support for his unpled, shackling-based claim.  (Pl.'s Ex. 23, Doc. 129 at 17-20; Doc. 128 at 16).  However, earlier in the case Defendants moved to strike Lynch as an expert because he was not timely disclosed, and the Court granted that motion.  (See Docs. 74, 75, 76, & 108).

on Plaintiff specifically, (see Frankowitz Dep. at 13).[13]

In sum, the Broward Sheriff is entitled to summary judgment on Plaintiff's § 1983 claim.

### 2.  Negligence/Wrongful Death

Plaintiff's negligence claim against the Broward Sheriff is based on failure to provide Press with his diabetes and blood pressure medications.  As already discussed, Plaintiff has failed to present evidence of negligence with regard to the treatment Press received at either jail, and to the extent this claim sounds in medical malpractice, it is precluded by lack of compliance with pre-suit requirements.   And, Plaintiff has not established a causal connection between failure to medicate or otherwise treat Press at either jail and any injuries. The Broward Sheriff is entitled to summary judgment on this claim.

### 3.  False Imprisonment

Plaintiff's false imprisonment claim against the Broward Sheriff is based on the alleged unlawfulness of Press's arrest.  As noted in the discussion of the claims against the Brevard Sheriff, however, a claim for false imprisonment will not lie under either Florida or federal law where arrest and detention are effected pursuant to a facially valid warrant.

### C.  Claims Against the Clerk

---

[13]Plaintiff asserts that there is evidence that Press had difficulty walking, citing a partial 2003 medical record from a consultation Press had with a doctor in Brevard County regarding pain and numbness in his lower right leg.  (Pl.'s Ex. 29, Doc. 116 at 23-24). However, no one has explained this document, and it pertains to Press's condition seven years prior to the events at issue and has not been shown to bear on his condition in May 2010.  There also is no evidence that anyone at the Broward Jail was aware of this document.

1.  § 1983

In her § 1983 claim against the Clerk, Plaintiff alleges that the Clerk, through his deputies and agents, "processed and issued an unlawful warrant for the arrest of . . . Press" and that had the Clerk not done so, Press would not have been arrested and would not have died.  (Am. Compl. ¶¶ 126-28).  However, neither of the warrants pursuant to which Press was arrested was unlawful, and this claim therefore fails.

Press was arrested in November 2009 on the July 1986 warrant for violation of probation.  Plaintiff does not identify how that warrant—which was signed by a judge at the time Press violated his probation—was allegedly unlawful; she seems to assert that the warrant was stale and that Press should not have been arrested on that warrant twenty-three years later.  As noted earlier, the staleness of a warrant does not render arrest pursuant to that warrant unlawful, and the 1986 warrant was not itself unlawful.

Press was again arrested in April 2009—this time on the March 25 no-bond capias issued by the Clerk's office when Press failed to appear at the March 25 Broward County hearing on his violation of probation.  This warrant is not an unlawful warrant either; the Clerk issued it at the direction of the judge before whom Press was scheduled to appear.  See, e.g., Williams v. Wood, 612 F.2d 982, 985 (5th Cir. 1980) (noting that clerks of court enjoy absolute immunity from damages actions where clerks act "in a nonroutine manner under command of court decrees or under explicit instructions of a judge"); Hyland v. Kolhage, 267 F. App'x 836, 842 (11th Cir. 2008) ("Court clerks 'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction.'" (quoting Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. 1981))).

Additionally, like the Sheriffs, the Clerk cannot be held liable under § 1983 on a respondeat superior theory.  Plaintiff has not identified a custom, policy, or practice of the Clerk that led to any constitutional violation Press may have suffered.

2.  Negligence/Wrongful Death

In her negligence claim against the Clerk, Plaintiff alleges that the Clerk "owed [and breached] a duty to the Plaintiff [sic] to accurately report the existence or non-existence of warrants against him and not issue unlawful warrants against him." (Am. Compl. ¶¶ 137-38). The Clerk is entitled to summary judgment on this claim.

First, as discussed in the preceding section, the Clerk did not issue any unlawful warrants against Press but instead issued warrants, if at all, at the express direction of a judge.  Second, the other part of this claim refers to an email that the Clerk sent to Press on March 1, 2010, in response to an inquiry from Press or his wife regarding whether there were any outstanding warrants for Press's arrest.  That email states:  "Based on the information you provided, this office does not currently have any active warrants for your arrest.  Case number 85037950MM10A, issued on 7/17/1986, shows served in our database and served in our Clerk's Office records as well." (Pl.'s Ex. 6, Doc. 114 at 14-15).  Plaintiff asserts that the Clerk misinformed Press, but the Clerk correctly responds that the information provided on March 1 was accurate as of that date.  The July 1986 warrant had been served on Press when he was arrested in November 2009, and the no-bond capias was not in existence on March 1—it was issued on March 25 when Press did not show up for his probation violation hearing.  Thus, while Plaintiff has not identified a basis for a "duty to accurately report," even if there were such a duty Plaintiff has not presented evidence of a breach of such a duty.

The Clerk notes that Plaintiff also argues in her response memorandum—though she does not allege in the Amended Complaint—that the Clerk should be held liable because the February 5, 2010 notice of the March 25, 2010 hearing was sent to Press's 1986 Broward County address instead of to his Brevard County address.  Again, Plaintiff is improperly attempting to recast her claims at the summary judgment stage, but even if this claim had been alleged in the Amended Complaint, it too would fail.  Under Florida law, court clerks do not owe a special duty to individuals to maintain records or issue paperwork.  See, e.g., Lovett v. Forman, 883 So. 2d 319 (Fla. 4th DCA 2004) (affirming dismissal of complaint alleging negligence against court clerk where plaintiff was arrested after clerk failed to make computer entry indicating that capias for plaintiff's arrest had been withdrawn).

The Clerk sent the hearing notice to the address on file at the Clerk's office—the Broward County address at which Press resided in 1986.  Plaintiff has presented evidence that the notice was returned to the Clerk as undeliverable on March 3, 2010.  (See Pl.'s Ex. 7, Doc. 114 at 19-20).  Nevertheless, the Court cannot conclude that Plaintiff has established a breached duty by failure of the Clerk to, as Plaintiff suggests, conduct an Internet or phone book search to try to find a different address for Plaintiff or to otherwise attempt to ascertain his actual current residence.[14]  Moreover, one of the conditions of Press's probation was that

_____

[14]Plaintiff asserts that the July 1986 violation-of-probation warrant was issued with Press's Brevard County address on it and that "[t]his shows that early on, the Clerk had [Press's] correct address . . . in Palm Bay, Florida."  (Doc. 127 at 2 (citing Pl.'s Ex. 2)).  However, the exhibit cited by Plaintiff is not the 1986 warrant; that warrant had Press's 1986 Broward County address, and Press did not live at the Brevard County address at that time.  The exhibit cited by Plaintiff is Brevard County Court minutes from November 19, 2009—a few days after Press was arrested by a Palm Bay police officer.  (Pl.'s Ex. 2).  There is evidence that the Broward Sheriff's Office and the Broward probation office were aware of

he obtain his probation officer's consent before leaving Broward County or changing his residence, (see Clerk's Ex. B, Doc. 92-2, at 2), and he apparently did not do so.  Additionally, the hearing notice indicates that it was sent not only to Press's Broward County address but to Press's bail bondsman in Palm Bay, and Plaintiff has not suggested that that notice was returned to the Clerk as undeliverable.[15]

Furthermore, the day after Press was transported to Broward County on May 6, he appeared before a magistrate judge, who determined that there was probable cause for Press's arrest.  Thus, from that day on, Press was in custody pursuant to not only a judicially-ordered warrant but also to a second judicial determination of probable cause.[16]

The Clerk is entitled to summary judgment on this claim.

3.  False Imprisonment

Plaintiff also brings a claim of false imprisonment against the Clerk, alleging that Press "was arrested unlawfully by the Brevard and Broward County Sheriffs because of an unlawful, bogus warrant issued against him for his arrest by the Clerk of Court." (Am. Compl.

---

Press's Palm Bay address by February 2010, but Plaintiff has not established when the Clerk became aware of it.

[15]The bail bondsman testified in his deposition that normally, when such a notice is received, the indemnitor on the bond would be called.  (Edward Williams Dep., Doc. 139, at 21).  The bondsman did not have Press's file, explaining that the file was among several that was damaged by a plumbing problem at his office.  (Id. at 5-6; Ex. 1 to Edward Williams Dep.).  He did not remember whether a copy of the hearing notice was received, (id. at 23-24), but it is possible that the notice was received but among the destroyed files, (id. at 24-25).  Additionally, the agent who wrote Press's bond no longer works at the bondsman's agency, and "there were a lot of questions about files when she left." (Id. at 26).

[16]There is no indication in the record as to whether Press requested to be released pending the May 13 violation-of-probation hearing.

¶ 141).  As noted earlier, however, the Clerk issued the capias at the direction of the judge, and the warrant was not bogus or unlawful.  This claim also fails.

IV.  Conclusion

Press's death was tragic, and the unlikely course of events leading up to it was nothing short of astounding.  However, as set forth herein, none of Plaintiff's claims survive summary judgment.  It is **ORDERED** and **ADJUDGED** as follows:

1.  The Motion for Summary Judgment (Doc. 91) filed by the Clerk of Court for Broward County, Florida, is **GRANTED** as to all three claims against this Defendant.

2.  The Motion for Summary Judgment (Doc. 93) filed by the Sheriff of Broward County is **GRANTED** as to all three claims against this Defendant.

3.  The Motion for Summary Judgment (Doc. 97) filed by the Sheriff of Brevard County is **GRANTED** as to all three claims against this Defendant.

4.  Any other pending motions are **DENIED as moot**.

5.  The Clerk is directed to enter a judgment providing that Plaintiff takes nothing on any of her claims against any Defendant in this case.  After entry of judgment, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida this 16th day of August, 2013.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

-23-